Tremain LACY *v.* STATE of Arkansas

CR 03-425                                                    144 S.W.3d 267

Supreme Court of Arkansas
Opinion delivered January 29, 2004

*Harrelson, Moore & Giles, LLP,* by: *Jeff Harrelson,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Laura Shue,* Ass't Att'y Gen., for appellee.

BETTY C. DICKEY, Chief Justice. Appellant Tremain Lacy appeals his convictions from the Miller County Circuit Court of two counts of aggravated robbery in which he was sentenced to twenty years in the Arkansas Department of Correction. Lacy claims that the trial court committed plain error by not dismissing the charges in violation of his right to a speedy trial. In addition, Lacy also alleges that the trial court erred by allowing information from a field interview card to be admitted into evidence. We have jurisdiction of this matter under Ark. Sup. Ct. R. 1-2(b)(1)(3)(4) and (5). For the reasons stated herein, we affirm.

*Facts*

Shortly after midnight on August 28, 2001, Officer Johnny Reed of the Texarkana Police Department (TPD) was called to investigate an abandoned vehicle in the driveway of a residence on Grim Street in Texarkana, Arkansas. After taking a statement from

the owner of the residence regarding a description of the person who abandoned the car, Officer Reed looked at the car and ran its tags while Sergeant Horn of the TPD searched the neighborhood to see if he could find a person fitting the driver's description.

A few minutes later, Horn returned with the appellant. Reed interviewed Lacy, who was not yet under arrest, and asked him his name, why he was there, to whom the car belonged, and why it was there. In addition Lacy gave Officer Reed his name, address, and date of birth. Reed placed that information on a field interview card. Because Lacy did not have a driver's license or any other form of photo identification, Reed asked Lacy to put an inked thumb print on the interview card, which is standard procedure for the TPD. In addition to his name, address, date of birth, and thumb print, the field interview card also contained Lacy's social security number, height, weight, clothing description, and the make, model, color, and license plate number of the vehicle. The entire process of interviewing Lacy, filling out the interview card, and checking for outstanding warrants took about five to ten minutes.

Lacy informed officer Reed that his cousin was the one who parked the car at the residence on Grim Street. The appellant said that his cousin went to see a girl, and that he, Lacy, got tired of waiting and left. Lacy never gave his cousin's name. Because Lacy had a suspended driver's license and could not move the car, Reed took him to a friend's house on Prince Street in Texarkana to find someone who could drive the car away. Lacy came back with two females, picked up the car, and left with the two women.

Later that evening, following a robbery at the Triple J Convenience Store in Texarkana, Officer Kittele Stewart of the TPD attempted to stop a car in the vicinity of the store, but when Officer Stewart turned on her blue lights, the suspect fled. Other officers, including Officer Reed, joined the chase, which led them from Texarkana to the small community of McNab in Hempstead County. The driver abandoned the car in front of a house in McNab and ran into a nearby swamp. Officer Reed realized that it was the same car he had stopped a few hours earlier on Grim Street. Using the aforementioned field interview card, Reed confirmed that the license plate information was the same, and he discovered that Lacy's address was just a few houses from where the car was now abandoned. Lacy was arrested the next day and charged with two counts of aggravated robbery. The first count stemmed from

a robbery of the E-Z Mart in Texarkana on August 10, 2001. The second count was for a robbery of the Triple J convenience store in Texarkana on August 28, 2001. Both robberies involved the use of a handgun.

Glen Hudspeth, an attorney with the Miller County Public Defender's Office, was initially appointed to represent Lacy. At a pretrial hearing on March 11, 2002, Hudspeth, with Lacy's consent, moved to continue the trial until June 17, 2002, and the appellant agreed that the speedy trial time would be tolled during that period. During the final pretrial hearing on June 4, 2002, before the trial on June 17, Lacy's stand-in public defender, John Stroud, told the court that a plea agreement had been reached and that the agreement would be presented to the court on June 17. On June 17, 2002, Hudspeth told the court that plea negotiations had broken down, and the agreement was no longer valid. Because of Lacy's representation to the court on June 4 that a trial would not be necessary, Circuit Judge Jim Hudson then ruled that Lacy had waived his right to a speedy trial from June 17 – August 1, 2002, which was the next available trial date.

Following this pretrial hearing, Hudspeth, due to ethical considerations, moved to withdraw as Lacy's attorney. At a hearing on July 15, the trial court granted Hudspeth's motion to withdraw and requested that the Arkansas Public Defender Commission provide an attorney to represent Lacy. On August 1, 2002, the date scheduled for trial, Jeff Harrelson entered his appearance as the attorney of record for Lacy. Because he had not had sufficient time to prepare for trial, Harrelson moved for a continuance. The court set a new trial date for September 23, 2002.

During a pretrial hearing on September 12, the court heard Lacy's motion to suppress evidence pertaining to the field interview card and fingerprint obtained by Officer Reed on August 28, 2001. The motion was denied, and, following jury selection on September 23, 2002, both robberies were tried to a single jury on September 24 and 25, 2002. Lacy was found guilty on both counts of aggravated robbery, and the jury sentenced him to eighteen years on one count and thirteen years on the other count. The court ordered two of the thirteen years to run consecutively with the eighteen-year sentence, with the remaining eleven years to run concurrently, for a total sentence of twenty years.

## Conditional Appeal

■ ■ Lacy asks this court to accept his appeal as a "conditional appeal," limiting this court's action to either affirming the case or reversing and dismissing it. Lacy notes our holding in *Holt v. State*, 300 Ark. 300, 778 S.W.2d 928 (1989) where this court stated that neither precedent nor any rule allows this court to affirm a case where it actually requires that the case be reversed and remanded for a new trial. Thus, conditional appeals are not allowed. Lacy offers no convincing argument or authority regarding why *Holt* should be overturned. Rather, Lacy simply asks this court to reconsider the position taken in *Holt*. We have said many times that unless the appellant provides a convincing argument or authority, the issue will not be considered on appeal unless it is apparent without further research that it is well taken. *Webb v. Bouton*, 350 Ark. 254, 85 S.W.3d 885 (2002). Because Lacy neither provides any convincing argument nor offers any convincing authority in support of our overruling our decision in *Holt*, we will not address his arguments on appeal and must affirm the trial court.

Affirmed.

BROWN, J., dissents.

R OBERT L. BROWN, Justice, dissenting. The majority opinion denies Tremain Lacy his right to appeal. That is a radical step which should only be taken in the direst of circumstances. I would accept Lacy's appeal and consider only the speedy-trial issue. Because the speedy-trial issue is not preserved, I would affirm the trial court. I would not address the second issue dealing with the thumb print and identity card because Lacy directed his counsel not to appeal that issue.

There is no question but that the right to appeal in a criminal case is a fundamental part of due process which is specifically protected by the United States and Arkansas Constitutions. *See* U.S. Const. amend. 5 and 14; Ark. Const. art. 2, § 8. *See also* Ark. R. App. P.—Crim. 1(a). Despite this constitutional protection and the right to appeal in our Criminal Rules, this court has announced in the past that it would not accept a conditional appeal in a particular case. *See Holt v. State*, 300 Ark. 300, 778 S.W.2d 928 (1989). In *Holt*, the appellant expressly stated in his brief and at oral argument that he wanted either a dismissal or an affirmance but no new trial. We could not accommodate the appellant's request in

*Holt,* because our review reflected that one issue raised would require reversal and a retrial. We, accordingly, would not allow Holt to argue on appeal only the point that would require dismissal. The underlying policy consideration in *Holt* was that we would not allow him to appeal only the dismissal point and not risk a longer sentence by arguing a second point for reversible error which would result in a new trial.

The *Holt* case is distinguishable from the facts of this case. In *Holt,* we said:

> *Our review* of the issues raised in this appeal reflect only one which has merit, and that issue, mentioned below, would require a retrial.

*Holt,* 300 Ark. at 301, 778 S.W.2d at 929 (emphasis added). In that case, six points for reversal had been raised. Holt insisted in his brief and at oral argument that only dismissal or affirmance be considered by this court and not reversal and remand for a new trial, even though he had raised six points in his appeal.

In the instant case, that is not the situation. Lacy has directed his attorney only to appeal one issue—the speedy-trial violation. There is no second issue that he has appealed where this court has determined that there is reversible error warranting a new trial.

Again, we are on shaky ground when we deny a criminal appellant an appeal on the basis that he only wishes to appeal one issue and not two. I would distinguish this case from *Holt* and permit the appeal.

I respectfully dissent.